# 20-3794(L)

22-660 (Con.)

UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

RUBEN MORCIGLIO, AKA Sealed Defendant 1
Defendant,

CARLTON VANIER, AKA Sealed Defendant 2
Defendant-Appellant

ON APPEAL FROM JUDGMENT AND SENTENCE OF THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

DEFENDANT-APPELLANT CARLTON VANIER'S BRIEF

---

Devin McLaughlin, Esq.
Langrock Sperry & Wool, LLP
111 South Pleasant Street
Middlebury, VT 05753
(802) 388-6356
Attorney for the Appellant

# TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Preliminary Statement .......................................................................... 1

Jurisdictional Statement ....................................................................... 1

Statement of Issues............................................................................... 1

Statement of the Facts and the Case .................................................. 2

Summary of Argument......................................................................... 17

Argument................................................................................................ 18

    I.  Mr. Vanier Should Have Been Allowed to Withdraw His Guilty Plea. ........ 18

    II.  The District Court's Imposition of Special Conditions of Supervised Release was Procedurally Unreasonable........................................ 25

Conclusion............................................................................................. 29

Certificate of Compliance ................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

Brady v. Maryland, 373 U.S. 83 (1963)............................................4, 13, 14

Giglio v. United States, 405 U.S. 150 (1972) ..............................................4, 13

United States v. Arevalo, 628 F.3d 93 (2d Cir. 2010) ...........................................19

United States v. Betts, 886 F.3d 198 (2d Cir. 2018) ................................................26

United States v. Bowman, 348 F.3d 408 (4th Cir. 2003)...........................................23

United States v. Castillo, 303 Fed. Appx. 989 (2d Cir. 2008) ..............................19

United States v. Couto, 311 F.3d 179 (2d Cir. 2002)...........................................20

United States v. Doe, 537 F.3d 204 (2d Cir. 2008)........................................20, 21

United States v. Eaglin, 913 F.3d 88 (2d Cir. 2019) ...........................25, 27, 29

United States v. Gonzalez, 970 F.2d 1095 (2d Cir. 1992) ..............................20

United States v. Hamilton, 510 F.3d 1209 (10th Cir. 2007) ..........................21

United States v. Hennelly, 2022 WL 17481625 (2d Cir. 2022)........................28

United States v. Hernandez, 242 F.3d 110 (2d Cir. 2001) ......................19, 20, 26

United States v. Lavancher, 2023 WL 7293766 (2d Cir. 2023) .......................28

United States v. Leonard, 2023 WL 2977523 (2d Cir. 2023)...........................26, 28

United States v. Lloyd, 901 F.3d 111 (2d Cir. 2018)..........................................19

United States v. Lombardozzi, 436 F.2d 878 (2d Cir. 1971).................................24

United States v. McQueen, 2023 WL 4009742 (2d Cir. 2023) ...........................28

United States v. Pendergrass, 403 Fed. Appx. 552 (2d Cir. 2010) .....................23

United States v. Rosa, 123 F.3d 94 (2d Cir. 1997) ..........................................19

United States v. Rosen, 409 F.3d 535 (2d Cir. 2005) ......................................25

United States v. Salazar, 2023 WL 4363247 (2d Cir. 2023)...............................29

United States v. Thompson-Riviere, 561 F.3d 345 (4th Cir. 2009) ....................21

United States v. Torres, 129 F.3d 710 (2d Cir. 1997)........................................22

United States v. Trimarco, 2023 WL 2195999 (2d Cir. 2023) .............................28

United States v. Vega, 11 F.3d 309 (2d Cir. 1993)................................................24

**Statutes**

18 U.S.C. § 1591 ..............................................................................2, 3, 12

18 U.S.C. § 1594 ..........................................................................2, 3, 12, 14

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 3553 ...................................................................16, 26, 27

18 U.S.C. § 3742 ..................................................................................1

28 U.S.C. § 1291 ..................................................................................1

## Other Authorities

U.S.S.G. § 2G1.3 ................................................................ 6

U.S.S.G. § 2X1.1 ................................................................ 6

U.S.S.G. § 3D1.4 ................................................................ 6

U.S.S.G. § 5D1.3 .............................................................. 27

## Rules

Federal Rule of Criminal Procedure 11 ........................................... passim

## PRELIMINARY STATEMENT

The Honorable Vernon S. Broderick, United States District Court Judge for the Southern District of New York, presided over the proceedings below, and there are no published opinions from the proceedings.

## JURISDICTIONAL STATEMENT

Appellate jurisdiction exists pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, as this is a direct appeal from a final judgment including sentence entered against Defendant-Appellant Carlton Vanier on March 24, 2022, in the United States District Court for the Southern District of New York. Mr. Vanier filed a timely notice of appeal on February 24, 2022.[1] A118.[2] Jurisdiction in the District Court existed pursuant to 18 U.S.C. § 3231, which grants to the United States District Courts original exclusive jurisdiction over all offenses against the United States, which include Mr. Vanier's offenses of conviction.

## STATEMENT OF ISSUES

I.    Mr. Vanier Should Have Been Allowed to Withdraw His Guilty Plea.

II.   The District Court Erred in Imposing Special Conditions of Supervised Release Without Record Explanation.

---

[1] Sentencing was held on February 15, 2022, but judgment was not entered on the docket until March 24, 2022.

[2] "A__" denotes reference to Defendant/Appellant's Appendix. "Doc. No. __" denotes reference to the ECF Document Number as designated in the District Court docket entries.

## STATEMENT OF THE FACTS AND THE CASE

Mr. Vanier was indicted in the United States District Court for the Southern District of New York on December 11, 2018. The five-count indictment charged Mr. Vanier and co-Defendant Ruben Morciglio with multiple sex offenses, including conspiracy to commit sex trafficking against the two of them from on or about 2011 to October 2018 in violation of 18 U.S.C. § 1594(c), and two substantive counts of sex trafficking against Mr. Vanier in violation of 18 U.S.C. §§ 1591(a), (b)(1), (b)(2) and 2. Doc. No. 1. Mr. Vanier was arrested on December 12, 2018, and has remained in custody since his arrest.

The case went through a series of status conferences. One reason for the delay was the government addressing the challenges of the electronic discovery related to phone searches and Backpage.com ads. The matter ultimately was scheduled for trial to commence on February 18, 2020. Mr. Vanier appeared before the District Court on November 21, 2019, at what was scheduled for a change of plea. Mr. Vanier indicated that he needed additional time to review the proposed plea, and the government had agreed to extend its offer until December 6. At the status, Mr. Vanier told the Court that he wanted a new lawyer. Doc. No. 34, p. 5. Attorney Roth indicated that Mr. Vanier was not happy with the government's offer, and that Mr. Vanier was uncomfortable with his representation. Id. Judge Broderick granted Mr. Vanier's request for a new

2

attorney, making it clear, however, that he would not extend the February trial date. Attorney Gregory was appointed for Mr. Vanier on November 25.

On December 16, 2019, Mr. Vanier appeared before the Court on a change of plea to a two-count superseding information, pursuant to a plea agreement. Count One of the superseding information charged Mr. Vanier with sex trafficking of a 15-year-old minor victim ("Minor Victim-1") on or about the summer of 2016, in violation of 18 U.S.C. § 1591(a), (b)(2), and 2. Count Two charged Mr. Vanier with sex trafficking conspiracy with unnamed co-conspirators as to Minor Victim-2 from on or about 2010 up to and including on or about 2011, in violation of 18 U.S.C. § 1594(c). Doc. No. 30.

Under the plea agreement, Mr. Vanier agreed to plead to those two counts. In exchange, he would not be further prosecuted by the Southern District for sex-trafficking of Minor Victim-1 in the summer of 2016 and for sex-trafficking of Minor Victim-2 in the 2010/2011 timeframe. The parties stipulated to a Guidelines calculation and range, agreeing that the offense level for Count One was 36, and the offense level for Count Two was 40, grouping led to a total offense level of 42, reduced by three levels for acceptance of responsibility to 39. Mr. Vanier was in Criminal History Category IV, which meant a Stipulated Guidelines Range of 360 months' to life imprisonment. A24-28.

3

The agreement contained an appeal waiver, barring Mr. Vanier from appealing any sentence that was within or below the Stipulated Guidelines Range of 360 months to life. Excluded from the appeal waiver were any claims based on ineffective assistance of counsel. Further, Mr. Vanier agreed to waive

> "Any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jenks* Act material, exculpatory material pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this agreement."

A29.

Judge Broderick started the plea hearing by establishing Mr. Vanier's knowing waiver of indictment. Judge Broderick then took Mr. Vanier through a thorough Rule 11 colloquy, which addressed every component and advisement under the Rule. The Judge established Mr. Vanier's competence to enter a plea, A36-37. He went over with Mr. Vanier all of his trial and counsel rights, Rule 11 (b)(1)(B)-(E), and his waiver of trial rights by pleading guilty, Rule 11(b)(1)(F). A38-41. The Judge had the government state the elements of each charge, Rule 11(b)(1)(G), and the Judge informed Mr. Vanier of the maximum penalties, mandatory minimum penalties, forfeiture, restitution and assessments. Rule 11(b)(1)(H)-(L). A45-46. The Judge discussed the Guidelines process and the advisory nature of the same, emphasizing that Mr. Vanier could not withdraw his

4

plea even if he received a sentence which differed from anyone's Guidelines prediction. Rule 11(b)(1)(M), A47-48.

As required by Rule 11(c), the Court went over the plea agreement with Mr. Vanier. He confirmed that Mr. Vanier had stipulated to a Guidelines Range, A49, but that it was not binding on the Court. Judge Broderick expressly pointed out the appeal waiver provision, and Mr. Vanier confirmed his agreement to waive the right to appeal or otherwise challenge a sentence within 360 months to life. Rule 11(b)(1)(N), A50. The Judge established that Mr. Vanier was entering into the agreement and pleading voluntarily, without force or threats or outside promises. Rule 11(b)(2), A50-51.

As to the factual basis for the plea, the Judge asked Mr. Vanier to state what he did that made him believe he was guilty of the charges, to which Mr. Vanier read the following prepared statement:

> Count One, sex trafficking of a minor. In and around the summer of 2016, in the Bronx, New York, I knowingly recruited an [sic] advertisement internet, one or more women to engage in sexual acts for money. I received part of the money that the women received for sex. I reasonably observed the girls, and one or more of the women was not at least 18 years old.
>
> Count Two, the conspiracy to commit sex trafficking. In or about 2010, to in or about 2011, in the Bronx, New York, I, along with others, recruited – I, along with others, agreed to recruit and advertise and using mobile devices girls for sex in exchange for money. Some of these proceeds I received. I agreed to do these acts knowingly and in reckless disregard of the fact that a combination of fraud threats – fraud and threats would be used to cause such persons to engage in

5

sex for money, and these girls have not attained the age of 18.  I
realize that I have hurt and endangered many others by my actions.
I'm sorry.

The Court:   Okay. And when you did those things, did you know
what you were doing was illegal?

The Defendant:      Yes.

A51-52.  At the prompting of the government as to whether force was used, the

Judge asked with regard to Count Two whether Mr. Vanier or any of his co-

conspirators intimidated any of the girls, to which Mr. Vanier replied yes.  A53.

Mr. Vanier entered his plea of guilty.  A52.

Probation undertook preparation of Mr. Vanier's Presentence Investigation

Report.  The report was prepared on February 19, 2020, and revised on March 10,

2020.  Probation's Guidelines calculations mirrored those contained in the plea

agreement.  The base offense level for Count One was 30 pursuant to U.S.S.G. §

2G1.3(a)(2).  Two levels each were added for unduly influencing a minor to

engage in prohibited sexual conduct, for use of a computer, and because the

offense involved the commission of a sex act, for an offense level of 36.  The base

offense level for Count Two was 34, pursuant to U.S.S.G. § 2X1.1 and §

2G1.3(a)(1).  Adding the same enhancements as applied in Count One, Count

Two's total offense level was 40.  Under the grouping rules, two levels were

added, § 3D1.4, for a total offense level 42, which resulted in an applicable

Guidelines offense level of 39 after reduction for acceptance of responsibility.

PSR, ¶¶ 23-46. Mr. Vanier was determined to be in Criminal History Category IV. Id., ¶60. Mr. Vanier's resulting Guidelines imprisonment range was 360 months to life. Id., ¶90.

The PSR detailed the underlying conduct involved in the two counts of conviction. Id., ¶¶10-14. The PSR also detailed Mr. Vanier's own difficult childhood. He was raised by his mother in the Bay View projects in Brooklyn, and was constantly surrounded by gang drugs and violence. He was expelled from multiple high schools due to behavioral issues. He also has been addicted to substances since high school. Id., ¶¶66-82.

Mr. Vanier, through Attorney Gregory, submitted a sentencing memorandum on June 1, 2020 in anticipation of sentencing scheduled for June 18. Doc. No. 51. The memorandum focused on Mr. Vanier's childhood challenges. A mitigation report detailed the domestic violence between his mother and father that severely disrupted Mr. Vanier's childhood; the lack of stability in his life as he was tossed back and forth between his warring parents; and his mother's criminal troubles, which included using Mr. Vanier as a youth to help her shoplift. The Report also detailed Mr. Vanier's learning and emotional shortcomings which substantially obstructed his ability to navigate school. Attorney Gregory emphasized the difficult Covid conditions Mr. Vanier had endured during pre-trial detention at MCC. Mr. Vanier asked for a downward variance sentence.

The government moved for adjournment of sentencing, which was granted, with sentencing ultimately rescheduled for October 9, 2020. The government filed its sentencing submission on October 2. Doc. No. 58. It detailed Mr. Vanier's offense conduct. It noted Probation's recommendation of 360 months' imprisonment. The government urged the Court to impose a sentence within the Guidelines range of 360 months to life. It emphasized the seriousness of the offense, pointing to violence attributed to Mr. Vanier in connection with the sex trafficking offenses, and its characterization of Mr. Vanier's callous treatment of the victims as his property. It also emphasized Mr. Vanier's criminal history, and its view that prior "lenient" sentences had not worked to deter Mr. Vanier.

Attorney Jonathan Rosenberg was then privately retained by Mr. Vanier and entered his notice of appearance, along with a request to adjourn sentencing. The Court held a status conference on October 30, 2020, to address the status of Mr. Vanier's representation. Attorney Gregory withdrew from representation at that status. Attorney Rosenberg discussed the potential need for a *Fatico* hearing, and represented that Mr. Vanier was in a residential rehabilitation program during a portion of the charged 2010 and 2011 timeframe in Count Two, and that he was also incarcerated during some of that timeframe. Attorney Rosenberg did allude to withdrawing the plea as to Count Two, while affirming guilt as to Count One. Doc. No. 72, pp. 4-6. Attorney Rosenberg also questioned the reliability of the

8

Count Two complainant. The Court directed Attorney Rosenberg to identify the particular claims he was making in a written submission. Id., pp. 9-11.

On January 26, 2021, Attorney Rosenberg on behalf of Mr. Vanier filed a letter entitled "Request to Withdraw Plea and/or for Sentencing Hearing." Doc. No. 80. Mr. Vanier objected to the calculated sentencing range, including the enhancements, and requested a *Fatico* hearing. Mr. Vanier complained about the government's recommendation of a sentence of 360 months' to life imprisonment. Mr. Vanier affirmed his guilt as to Count One, but challenged the factual basis for some of the Guidelines enhancements. Mr. Vanier contested his plea as to Count Two. He stated that the government's recounting in its sentencing memorandum of the facts underlying Count Two made him realize that he did not commit the crime alleged in Count Two. Id., p.2. Mr. Vanier specifically asked to withdraw his guilty plea as to Count Two. Id., p.3. He pointed out that, through counsel, he had obtained confirmation from Samaritan Daytop Village that he was in residential treatment from 7/9/10 to 12/13/10, which potentially conflicted with the Count Two allegation of a conspiracy during a 2010 to 2011 timeframe. Mr. Vanier denied having anything to do with the Count Two complainant until after he met her as an adult.

The government filed a response letter on February 2. Doc. No. 81. It argued that Mr. Vanier did not satisfy the relevant standards for the grant of a

motion to withdraw his plea. It also argued that Mr. Vanier's attempt to dispute the Guidelines range and underlying enhancements was in breach of the plea agreement. The government asked for specific performance of the plea agreement, holding Mr. Vanier to the factual admissions contained in the plea agreement and resulting enhancements.

Mr. Vanier replied on February 9, Doc. No. 82, asserting that he was not in breach of the plea agreement by moving to withdraw his plea because the plea agreement expressly allowed withdrawal based on the government's failure to produce information establishing factual innocence or *Giglio* impeachment material. Plea Agreement, p. 7, A29. Mr. Vanier's position was that the government should have discovered and disclosed that Mr. Vanier was in residential treatment for a substantial part of 2010. Mr. Vanier also argued that other language in the plea agreement allowed him to move to withdraw, and to attack the enhancements, without violating the agreement. Mr. Vanier pointed out that the government had consented to his requested continuance to seek the residential treatment records, and that it should agree with the questions raised about the Count Two complainant's veracity. Mr. Vanier maintained his additional request for a *Fatico* hearing, addressing the relevant factors for decision on permitting withdrawal of his plea. Mr. Vanier asserted his innocence as to Count Two. He claimed to not know the complainant when she was a minor – he only

knew her as an adult. Through counsel, he had indicated the potential of withdrawing his plea at the October 30, 2020 conference, which was 10 months after the December 16, 2019 change of plea. Attorney Rosenberg indicated that Mr. Vanier could only productively discuss this issue with him as new counsel. Finally, there was no prejudice to the government, and withdrawal would protect against the government being misled by its own witness.

Judge Broderick held a status conference on April 28, 2021, to address Mr. Vanier's motions. Hearing argument from both sides, the Judge directed that any additional written submission be pursuant to an agreed-upon scheduling order.

On June 7, 2021, Attorney Rosenberg for Mr. Vanier filed a Supplemental Motion to Withdraw his Guilty Plea as to Count Two of the Superseding Indictment or, in the alternative, to grant Defendant's Motion for a *Fatico* hearing. Doc. No. 90. Mr. Vanier claimed two bases for withdrawal of his plea. First, that the government breached the plea agreement by withholding *Giglio* information that was material to Mr. Vanier's decision to enter a plea. Second, that Mr. Vanier's plea was not knowing or voluntary. Further, if the Court denied the withdrawal motion, Mr. Vanier asked in the alternative for a *Fatico* hearing to challenge factual claims made by the complaining witness.

With regard to the first basis, Mr. Vanier claimed that the government failed to disclose "a totality of information that prejudiced him," including his actual

11

incarceration dates in 2011, his custodial placement in the Skytop facility, and that there existed no evidence of communications between Mr. Vanier and the complainant from the 2010/2011 time period or Backpage.com postings from that time period. Id., pp. 5-8. The delay in filing to withdraw the plea was in part excused by the Covid pandemic and the resulting interference in client/counsel communications. As to the second basis for the withdrawal, Mr. Vanier pointed to the absence of a reference to the statutory penalty provisions (§ 1591) applicable to a § 1594(c) conspiracy conviction. These were not referenced in the Superseding Information, the plea agreement, or the plea allocution. Attorney Rosenberg also claimed that because the Court did not state that there was a mandatory minimum sentence for the Count Two conviction (which was accurate), Mr. Vanier was misled into thinking he could avoid a term of imprisonment on Count Two. Id., pp. 9-13.

The government responded on June 21. Doc. No. 93. It argued that Mr. Vanier's change of plea allocution as to the factual basis for Count Two was sufficient to satisfy the elements of the charge. Further, the allocuted facts fully supported the Guidelines enhancements. It argued that Mr. Vanier had not established a fair and just reason for withdrawal of his plea. Moreover, Mr. Vanier could not retain the benefit of the plea agreement as to Count One while withdrawing from the agreement as to Count Two. The government denied that it

12

had violated its *Brady* or *Giglio* obligations, pointing out that the information

regarding Mr. Vanier's residential placement and incarceration were facts known

to him, and therefore not within the scope of *Brady* or *Giglio*. It described the

evidence it had against Mr. Vanier on Count Two, including the statements from

the victim. Finally, it asked the Court to deny the *Fatico* request because Mr.

Vanier had not in fact provided a specific articulation of the factual allegations he

wished to challenge at such a hearing.

By decision dated December 17, 2021, Judge Broderick denied all of Mr.

Vanier's motions. Doc. No. 96, A57-82. As to whether Mr. Vanier had

demonstrated a fair and just reason to withdraw his plea within the meaning of

Rule 11(d)(2)(B), the Court found his claim of factual innocence unpersuasive.

The essence of the claim was that he was either incarcerated or in a drug treatment

facility during the Count Two charged period of 2010 and 2011. However, even

considering his incapacitated periods, Mr. Vanier was out for a substantial period

of those two years (308 days), which meant that he did not in fact have an alibi

defense. The Judge also declined to accept unsworn statements as to innocence,

presented through Attorney Rosenberg, over Mr. Vanier's sworn admissions at his

change of plea. The Judge found that the delay of 10 ½ months in raising the

possibility of withdrawal cut against granting the motion. A70-71. With regard to

the claimed discovery violations, the Judge found that – contrary to Mr. Vanier's

claim – there was evidence that he had contact with the Count Two complainant during the charged time period, namely her statements to the police, and that he had been aware of these since at least the bail hearing on December 14, 2018. The Judge found that Mr. Vanier had been provided with his criminal record, putting him on notice of his incarceration dates. Further, the Judge agreed with the government that it had no obligation to provide Mr. Vanier with the dates of his residential drug treatment or actual incarceration dates. "Because he lived those events, … they do not qualify as *Brady* information." A74.

With regard to the claim that Mr. Vanier's plea was not knowing or voluntary, the Judge noted that the government had accurately recited the elements of the charges at the plea hearing and Mr. Vanier had admitted to conduct that violated each of these elements. He noted that there was no reason for the government to mention the penalty provision applicable to the § 1594(c) conspiracy charge, because it was not an element of the charge. With regard to the knowing and voluntary nature of the plea, the Judge detailed the multiple portions of the plea colloquy wherein he confirmed that Mr. Vanier was acting freely and with full understanding as to what was happening. The Judge rejected Attorney Rosenberg's invitation to infer involuntariness because Mr. Vanier would say anything to avoid a potential life sentence. A75-77.

The Judge affirmed that the Guidelines calculation for Count Two was correct, rejecting Mr. Vanier's invitation to follow Ninth Circuit caselaw to the contrary. A79-80.

With regard to Mr. Vanier's *Fatico* hearing request, the Judge pointed out that he had asked counsel during the April 28, 2021, conference to identify the contours of the disputed facts he wished to contest. Attorney Rosenberg represented that he would provide this in his post-conference submission. However, his submission did not provide any information to define the nature of the alleged factual disputes, and consequently the Judge denied the motion on that basis. A81. Further, assuming that the challenged enhancements were all enhancements for the Count Two conduct, a *Fatico* hearing was not necessary because each of the enhancements was supported by Mr. Vanier's plea allocution and the stipulations in the plea agreement. A80-82.

In anticipation of sentencing, Mr. Vanier submitted a Supplemental Sentencing Memorandum, the bulk of which addressed whether the appropriate Guidelines base offense level for the Count Two conspiracy was 34, 30 or 14. Doc. No. 97. The government responded, arguing that the range stipulated to in the plea agreement and found by probation in the PSR both properly calculated the base offense level for Count Two as 34. It argued that the 3d and 8th Circuit approach was more persuasive than the 9th Circuit's analysis, and pointed the Judge

to multiple Southern District opinions agreeing. The government detailed the sentences given the multiple other defendants arising out of the same investigation. Looking at those sentences, the government changed its sentencing recommendation from a Guidelines range term of imprisonment between 360 months to life, to a term of imprisonment of 240 months. The government believed this was more in line with regard to Mr. Vanier's culpability relative to other similarly situated defendants. See 18 U.S.C. § 3553(a)(6).

Sentencing was held on February 15, 2022. Judge Broderick adopted the PSR's factual findings over noted objections of the defense. Addressing first the Guidelines calculation, Judge Broderick rejected the challenge to Count Two's base offense level, holding it was correctly calculated to be 34. A93. Hearing argument on acceptance of responsibility, the Judge granted the 3-level reduction to Mr. Vanier despite his post-plea litigation, labeling it a "close call." A94. The ultimate Guidelines range was 360 months' to life imprisonment. The Judge then heard from the government, Mr. Vanier, and defense counsel. In announcing his sentence, Judge Broderick recited the applicable § 3553(a) factors. A108-109. He first acknowledged the "traumatic childhood" Mr. Vanier had endured. He balanced this against the severity of the offense, and the debilitating and life-altering impact it had on the minor victims. The Judge also discussed the violence and intimidation used in the offense. He particularly emphasized a victim being

16

intimidated into tattooing Mr. Vanier's nickname over her eye. A111-112. He referenced Mr. Vanier's prior criminal record, including robberies, and expressed concern that Mr. Vanier would continue committing crimes. A112. Judge Broderick imposed a sentence of 240 months on each count to run concurrent, with concurrent 5-year terms of supervised release. A113. He imposed standard conditions, and the special conditions set forth in the PSR. These included sex-offense treatment conditions and restrictions on computer usage. Judge Broderick offered no explanation for his imposition of the special conditions of supervised release. A113.

Mr. Vanier filed a timely notice of appeal on February 24, 2022. A118. Judgment was entered on March 24, 2022. A15. Attorney Rosenberg withdrew from representation, and undersigned counsel was appointed pursuant to the CJA to represent Mr. Vanier on appeal.

## SUMMARY OF ARGUMENT

The District Court abused its discretion in denying Mr. Vanier's motion to withdraw his guilty plea as to Count Two. Mr. Vanier presented a fair and just reason to withdraw his plea. He put forward a credible claim of legal innocence. This was supported by post-plea investigation showing that he was in a residential rehabilitation facility and incarcerated for a substantial portion of the 2010/2011 charged conspiracy period. The ten-and-a-half month delay in asking to withdraw

his plea was excused by the facts that he was not triggered as to the identity of the Count Two complainant until the filing of the government's sentencing memorandum; his memory of the charged timeframe was impacted by substantial drug use; and the Covid pandemic interfered with his communications with counsel. Allowing for withdrawal of the plea would not have prejudiced the government in any legally cognizable way. Mr. Vanier asks that he be allowed to go to trial on the charge for which he credibly claims innocence.

The District Court committed plain procedural error in imposing special conditions of supervised release on Mr. Vanier without any explanation. There was no record explanation for any of the special conditions. Further, the need for some of the conditions was not self-evident on the record. These included the restriction on adult pornography and the restrictions surrounding the monitoring of Mr. Vanier's internet devices. Under this Circuit's precedents, this complete absence of explanation requires reversal of the conditions even under the stringent plain error standard.

## ARGUMENT

I.   <u>Mr. Vanier Should Have Been Allowed to Withdraw His Guilty Plea.</u>

As a threshold matter, Mr. Vanier's appeal of the District Court's denial of his motion to withdraw his guilty plea is not barred by the appeal waiver in his plea agreement. Under the plea agreement, Mr. Vanier waived his right to take a direct

appeal "of any sentence within or below the Stipulated Guidelines Range of 360 months' to life imprisonment." A29. Appealing his conviction is not barred by a waiver of the right to appeal his sentence. United States v. Hernandez, 242 F.3d 110 (2d Cir. 2001), is controlling. In Hernandez, the defendant's appeal waiver applied to "any sentence within or below the stipulated Guidelines range." Id. at 113. The government argued that this appeal waiver barred defendant's appeal of the district court's denial of his motion to withdraw his plea. The court rejected this argument, observing that the plain language of the waiver provision limited the bar to appeals of the sentence, not of the conviction. Id. at 113-114. Like the defendant in Hernandez, Mr. Vanier is entitled to pursue his appeal.[3]

The additional appeal waiver language, barring Mr. Vanier from withdrawing his plea or appealing his conviction, is limited to challenges "on the ground that the government has failed to produce" certain discovery or exculpatory

---

[3] Conversely, the appeal waiver does work to bar any potential challenge Mr. Vanier could make to his sentence, given that he received a 240-month sentence, which was well below the 360-month to life Guidelines range. The waiver was expressly discussed and confirmed with Mr. Vanier during the plea colloquy. A50. Given Judge Broderick's complete adherence to the Rule 11 requirements, there is no colorable claim that the plea (including the appeal waiver) was itself not knowing or voluntary. See United States v. Lloyd, 901 F.3d 111, 118-19 (2d Cir. 2018)(mandated colloquy under Rule 11 is necessary for plea to be considered knowing and voluntary). Nor is there any colorable argument that an unwaivable error occurred. See United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997)(listing examples of certain errors which cannot be waived through an appeal waiver). Because Mr. Vanier waived his right to appeal his sentence, he cannot challenge on appeal the district court's Guidelines' enhancement decisions, see United States v. Castillo, 303 Fed. Appx. 989, 990 (2d Cir. 2008)(summary order)(error as to Guidelines range does not defeat appeal waiver), or its decision to deny a Fatico hearing, cf. United States v. Arevalo, 628 F.3d 93, 97 (2d Cir. 2010)(appeal waiver precludes Rule 32(i)(3) challenges).

19

materials.  A29.  This on its face is a very limited waiver, and does not purport to bar any appeals of conviction based on any other grounds.  Accordingly, it is not a bar here.  See Hernandez, 242 F.3d at 113 (plea agreement appeal waiver language must be applied narrowly and construed strictly against the government).

Under Rule 11(d), a defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting withdrawal."  It is the defendant's burden to satisfy the district court that there are valid grounds for withdrawal.  United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992).  To determine whether there is a fair and just reason for withdrawal, the district court should consider "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea."  United States v. Doe, 537 F.3d 204, 210-11 (2d Cir. 2008)(citing United States v. Couto, 311 F.3d 179, 185 (2d Cir. 2002)).

This Court's review of the district court's denial of a defendant's motion to withdraw his guilty plea is for abuse of discretion.  Doe, 537 F.3d at 211.  This is considered a stringent standard.  Id.

Although innocence in and of itself does not invalidate a plea, it strongly supports granting a defendant's motion to withdraw his plea of guilty.  Appellate courts do not hesitate to overturn the denial of a plea withdrawal motion where the

20

defendant presents a convincing claim of legal innocence. See, e.g., United States v. Thompson-Riviere, 561 F.3d 345, 354-57 (4th Cir. 2009). Importantly, the defendant is not required to prove his innocence to warrant withdrawal of his plea. That would be asking too much. It is enough that defendant has "asserted a claim of legal innocence," Doe, 537 F.3d at 210, with other circuits requiring that this claim be "credible." Thompson-Riviere, 561 F.3d at 348; United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007).

The District Court abused its discretion in denying Mr. Vanier's motion to withdraw his guilty plea as to Count Two of the Superseding Indictment. Mr. Vanier put forward a credible claim of legal innocence to the charge. Based on investigation undertaken by his new attorney post-plea, Mr. Vanier subpoenaed proof that he was housed in a residential substance treatment facility from July 9 to December 13, 2010. In addition, the government provided Mr. Vanier's actual incarceration dates for the robberies listed in ¶¶ 48 and 49 of the PSR, which started in April 2011 and continued until 2012. Count Two charged a conspiracy from in or about 2010 up to and including in or about 2011. As proven by the facts recited above, Mr. Vanier was incapacitated for a substantial portion of that time. The District Court was correct in observing that Mr. Vanier's periods of incarceration did not provide an alibi for the full two years, because per the court's math he was not locked up for 308 days over the course of the two years. A70.

21

What this math overlooks, however, is Mr. Vanier's point that having been reminded of his incapacitation, he was better able to remember that time period in his life, when he was himself between 17 and 19 years old, and knew that he did not engage in a conspiracy during that period of time. See Doc. No. 80, p.2 (Mr. Vanier informed counsel he had a poor memory of events in or about 2010 and 2011 due to ongoing drug use during that period).

It was also post-plea that Mr. Vanier, upon reviewing the government's initial sentencing submission, finally understood that the complainant in Count Two was someone who allegedly came back into contact with Mr. Vanier in the fall of 2018. See Doc. No. 58, p.2. It was only then that Mr. Vanier was able to connect the dots, and be in a position to assert that he had never engaged in sex-trafficking with that complainant back in the 2010/2011 time period.

Mr. Vanier recognizes that at his plea colloquy he admitted to facts supporting the Count Two 2010/2011 conspiracy charges and those statements ordinarily carry weight in considering subsequent claims of innocence. See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997). Four observations. First, there is objective evidence that not everything Mr. Vanier stated at his change of plea was accurate. Mr. Vanier stated that he had never been treated for any type of addiction, including drug or alcohol addiction. A36. We know that is false because he was in residential treatment in 2010 for months. Second, post-plea

22

investigation did unearth evidence – Mr. Vanier's treatment dates from July 10, 2010 to December 12, 2010, A70, – which do raise legitimate questions about the charged time period of the conspiracy.  Third, it does make sense that Mr. Vanier would not be able to put the puzzle together in his own mind until he saw the government's connection of the Count Two complainant to someone he knew as an adult in the government's sentencing letter.  Fourth, it also makes sense that given Mr. Vanier's consistently admitted guilt on Count One, he would have been willing to say anything with regard to Count Two to close out his case if, as here, the government apparently was insisting that he plead to both charges or face trial as to both.

With regard to the second prong – delay between the guilty plea and a request to withdraw the plea – Mr. Vanier recognizes that the caselaw puts 10 ½ months on the side of upholding the plea. Cf. United States v. Bowman, 348 F.3d 408, 415-16 (4th Cir. 2003)(delay of three months slightly favored defendant); United States v. Pendergrass, 403 Fed. Appx. 552, 554 (2d Cir. 2010)(implying that five-week delay supported defendant's position).  That said, delay alone is not determinative or controlling.  It can be overridden by the other considerations, and clearly should give way where there is a substantial credible claim of innocence. In addition, the inquiry should not ignore the impact of the Covid pandemic, which slowed every aspect of the judicial system down.  Mr. Vanier's ability to discuss

his concerns to new counsel, who was then able and willing to raise them, was necessarily hampered by Covid obstacles to client/counsel communications.

As to prejudice to the government, this factor squarely supports Mr. Vanier. The result of allowing withdrawal of the plea on Count Two would be trial on Count Two. In and of itself, forcing the government to trial does not qualify as prejudice within the meaning of this analysis, as otherwise every motion to withdraw a plea would be denied. The difficulties inherent in trial cannot be considered part of the prejudice analysis, because the defendant has the constitutional right to go to trial. The prejudice analysis can only ask whether undoing the guilty plea causes adverse impacts above and beyond what would have occurred if the defendant had never plead guilty. No such impact can be shown here. The burden on the complainant of going to trial is the same as it was pre-plea. The government's preparation burden is the same, and it will have plenty of time to prepare its case. While diminishment of memory might apply in another case, it does not apply here where the allegations were already dated. The government cannot demonstrate an appreciable difference in the memory of its complainant between 2020 and now as to events allegedly occurring in 2010/2011. Contrast United States v. Vega, 11 F.3d 309, 312 (2d Cir. 1993)(prejudice found in part because witness had entered witness protection program); United States v. Lombardozzi, 436 F.2d 878, 881 (2d Cir. 1971)(withdrawal of mid-trial plea would

24

require government to put on its case a second time).  Accordingly, there is no real

prejudice to the government, and this factor favors Mr. Vanier.

As this Circuit recognized in United States v. Rosen, 409 F.3d 535 (2d Cir.

2005), voluntariness is not the sine qua non of a plea withdrawal motion.  Id. at

547-48.  "There plainly are circumstances in which a court will find it fair and just

to relieve the defendant of a plea despite its voluntariness."  Mr. Vanier submits

this is just such a case.  He has a credible claim of innocence, supported by

objective evidence, brought forward through post-plea investigation, which will

result in no prejudice to the government.  Mr. Vanier asks that the Court find that

there was in fact a fair and just reason permitting withdrawal of his plea, and the

District Court's contrary decision must be reversed as an abuse of discretion.

II.    The District Court's Imposition of Special Conditions of Supervised Release
       was Procedurally Unreasonable.

The District Court imposed several special conditions of supervised release

on Mr. Vanier.  It failed, however, to state any reasons for imposing the conditions.

There was no explanation whatsoever.  Further, there was no self-evident

reasoning for some of the conditions from the rest of the record.  This was plain

procedural error, requiring reversal.

This Court reviews the imposition of conditions of supervised release for

abuse of discretion.  United States v. Eaglin, 913 F.3d 88, 94 (2d Cir. 2019).  "A

district court is required to make an individualized assessment when determining

whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error. In the absence of such an explanation, we may uphold the condition imposed only if the district court's reasoning is self-evident on the record." United States v. Betts, 886 F.3d 198, 202 (2d Cir. 2018). Because Mr. Vanier was on notice of the proposed conditions by virtue of them being in the PSR, and because he did not object to them, this Court's review is for plain error. United States v. Leonard, 2023 WL 2977523, at *2 (2d Cir. 2023)(Summary Order). Mr. Vanier's appellate challenge to the conditions was not within the scope of his appeal waiver, which only addressed the length of supervised release and did not address the conditions of supervised release. A29. See Hernandez, 242 F.3d at 113-14.

At Mr. Vanier's sentencing, the sole reference to the conditions of release was the District Court's imposition of them. The District Court announced: "You'll be subject to the standard conditions as well as the mandatory conditions on page 28 of your presentence report and the special conditions on page 30 and 31 of your presentence report." A113. There was no other discussion of the conditions at all. There was no record individualized assessment of why the conditions were necessary for Mr. Vanier. There was no discussion as to why the conditions were warranted by the § 3553(a) sentencing factors, and why the "involve no greater deprivation of liberty than is reasonably necessary" for these

26

purposes.  U.S.S.G. § 5D1.3(b).  This complete dearth of explanation is plain error, requiring reversal.

Mr. Vanier recognizes that some of the special conditions might escape plain error reversal because their reasonableness is self-evident from the record.  The easiest example is the no contact with the victim condition.  But there are conditions which lack this self-evident connection to Mr. Vanier's criminal behavior.

Mr. Vanier's conditions include a restriction on access to adult pornography. His conditions provide that "Defendant will not view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider."  A19.  Because adult pornography is protected by the First Amendment, restrictions on possession are tolerated "only in limited circumstances."  Eaglin, 913 F.3d at 99.  This Court has "routinely rejected bans on possession of adult pornography as a condition of supervised release where the district court failed adequately to connect the need for that condition to the defendant's likelihood of recidivism or to another sentencing factor."  Id.  "Such bans must be supported on the record by detailed factual findings establishing that the proposed ban is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a) and that it is reasonably necessary to accomplish their objectives."  Id.

The District Court here articulated no rationale, let alone "detailed factual findings," to support the restriction on adult pornography. The fact that the condition is a restriction on adult pornography, as opposed to an unalterable ban, does not mean that Mr. Vanier's First Amendment rights are not being unfringed upon. Where there is literally no explanation or stated justification for the adult pornography restriction, plain error reversal is warranted. See Leonard, 2023 WL 2977523, at *2-3 (plain error reversal of adult pornography ban where no record statement by court supporting ban); cf. United States v. Lavancher, 2023 WL 7293766, *3-4 (2d Cir. 2023)(Summary Order)(reversing adult pornography condition because district court did not undertake the particularized factfinding necessary); United States v. Hennelly, 2022 WL 17481625, *2 (2d Cir. 2022)(Summary Order)(upholding adult pornography condition against plain error challenge where district court made requisite individualized assessment). A district court's failure to articulate any reasons for a condition, where the record does not supply a self-evident reason, can be considered plain error. See, e.g., United States v. Trimarco, 2023 WL 2195999, *3 (2d Cir. 2023)(Summary Order)(community service condition reversed as plain error). United States v. McQueen, 2023 WL 4009742, *2-3 (2d Cir. 2023)(Summary Order)(without specifying standard of review, vacating special condition adult pornography ban

where court "did not state on the record any reason for the challenged" special condition).

Likewise faulty is the computer monitoring condition. Special conditions of supervised release limiting internet access "must be carefully explained and robustly supported by a district court." Eaglin, 913 F.3d at 91. Mr. Vanier's computer monitoring condition allows probation to conduct "initial and periodic unannounced examinations of any Device(s) that are subject to monitoring." A19. Allowing a computer search without suspicion has been characterized as a "sweeping" condition requiring more robust explanation to justify it. United States v. Salazar, 2023 WL 4363247, *3 (2d Cir. 2023)(Summary Order). Again, the District Court here offered zero explanation. This was plain error.

## CONCLUSION

With regard to remedy, Mr. Vanier has not challenged his conviction as to Count One. However, if his plea to Count Two is withdrawn, his sentence will necessarily need to be recalculated. Accordingly, Mr. Vanier submits that his conviction on Count One should be affirmed, his conviction on Count Two reversed, and his entire sentence vacated, with the matter to be remanded for further proceedings.

As also argued, Mr. Vanier's conditions of release should be vacated and the matter remanded for resentencing.

DATED at Middlebury, Vermont, this 6th day of February, 2024.

Devin McLaughlin
Langrock Sperry & Wool, LLP
111 South Pleasant Street
Middlebury, VT 05753
(802) 388-6356
dmclaughlin@langrock.com
Attorneys for Defendant-Appellant

UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT

---

UNITED STATES OF AMERICA,
    Appellee,

    v.

CARLTON VANIER,
    Defendant-Appellant

Docket No. 22-660

## CERTIFICATE OF COMPLIANCE

NOW COMES Defendant –Appellant Carlton Vanier, by and through his counsel, Devin McLaughlin, Esq., of Langrock Sperry & Wool, LLP, and pursuant to F.R.A.P. 32(a)(7)(c), certifies the following:

1.    The number of words in the brief is 7,131 as indicated by the word count of the Microsoft Office 365 word processing system used to prepare the brief, and the number of lines of text is 598 as indicated by the same system.

DATED at Middlebury, Vermont this 6th day of February, 2024.

LANGROCK SPERRY & WOOL, LLP


/s/ Devin McLaughlin
Devin McLaughlin
111 S. Pleasant Street
Middlebury, VT 05753
(802) 388-6356

2089050.1

31